**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| SHEIRA BROWN,<br><br>   *Plaintiff*,<br><br>v.<br><br>HARFORD BANK,<br><br>    *Defendant*. | Civil Action. No. 1:21-cv-00096-ELH |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## WITH INCORPORATED MEMORANDUM OF LAW

Defendant, Harford Bank, pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss the Complaint filed by Plaintiff, Sheria Brown, and states as follows:

## I.  INTRODUCTION

This matter arises out of allegations that Plaintiff was allegedly discriminated against and subjected to a "hostile consumer transaction" when she attempted to cash a check at a Harford Bank drive-thru lane. Plaintiff alleges that by questioning the authenticity of the check and ultimately rejecting it as potentially fraudulent, Harford Bank engaged in intentional racial discrimination in violation of 42 U.S.C. § 1981 and racial discrimination in a credit transaction pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA").

Harford Bank strongly condemns racial discrimination in all forms and empathizes with the anxiety that Plaintiff may have experienced when she could not cash her check. However, this is not a case of racial discrimination. Plaintiff alleges that the teller inspected a check that appeared facially defective based on its coloring and determined that it may have been forged or altered. In refusing to cash the check, the teller protected the assets of Harford Bank and its

accountholders. Plaintiff's claim is based solely on her subjective belief that she was treated differently due to her race but not a single fact supports this allegation. Rather, the conclusory allegations in Plaintiff's Complaint demonstrate the plausible, nondiscriminatory explanation for the teller's response when faced with a potential crime.

Since the objective facts do not demonstrate intentional racial discrimination, Plaintiff cannot state a claim for relief in Count, I under § 1981. Furthermore, Plaintiff does not state a cognizable claim in Count II under the ECOA because the statute only covers credit transactions, which does not include cashing a check. Therefore, Plaintiff has failed to state a claim for relief, and her Complaint should be dismissed.

## II.     FACTS

The following recitation of facts is taken from Plaintiff's Complaint.[1] On March 20, 2020, Plaintiff, an African American woman, drove into Harford Bank's drive-thru lane with her ten-month-old daughter to cash a check in the amount of $90.94. Compl. ¶¶ 10, 15-18. The teller, Gail, "aggressively" asked Plaintiff where the check was from, and Plaintiff told her she received it from her employer who is a Harford banking customer. Compl. ¶ 19. Gail informed Plaintiff that the check's coloring was "off," said "this [is not] you," and told her she was committing fraud and going to jail. Gail then locked the check in the bank vault and called the police. Compl. ¶ 20. When the police arrived, they instructed Gail to return the check to Plaintiff, but neither she nor the regional manager could do so because the vault was locked and

---

[1] Harford Bank does not necessarily agree with the accuracy of the facts alleged by Plaintiff and acknowledges that in reviewing the legal sufficiency of a complaint at the motion to dismiss stage, this Court must assume all well-pleaded facts are true. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). If this case proceeded further, the evidence would establish that Harford Bank actually called the accountholder and was advised not to cash the check, but this fact is not pled in Plaintiff's Complaint and should not be considered by the Court.

could not be opened.  Compl. ¶¶ 21-23.  Harford Bank returned the check to Plaintiff the following day when she returned to Harford Bank, "which resulted in unnecessary inconvenience and expense" to Plaintiff.  Compl. ¶ 24.

Plaintiff has alleged that she was "racially discriminated against by Defendant Harford Bank and unfairly disregarded as compared to Defendant's white customers, who receive high-quality customer service, fair consumer transactions, and are treated with basic dignity and respect."  Compl. ¶ 26.  The Complaint states that Plaintiff was denied a fair commercial banking transaction solely on the basis of race, and that:

> Over time, Defendant established two processes for handling, treating, encountering, and dealing with its customers on a day-to-day basis: one for white customers and a separate, but not equal, process for its customers of color. The two are distinctly unequal. By relegating its customers of color to a separate, but unequal, process, Defendant Harford Bank affords them inferior opportunities, and treats people of color as inferior. This is the epitome of racial discrimination.

Compl. ¶ 28.  Plaintiff has alleged that these two separate processes deny customers of color the same opportunities as Harford Bank's white customers, including applying for loans, lowering their mortgages, being treated with dignity, and "enrich[ing] their financial roots within a trusted banking system that will support them and respect the fiduciary duty to place the customer's interests above Defendant's own."  Compl. ¶ 29.

### III.  <u>LEGAL ARGUMENT</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims pled in a complaint.  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019).  Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  In order to survive a motion to dismiss, a complaint must set forth a "'claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 195, 167 L.Ed.

2d 929 (2007)); *see* Fed R. Civ. Pro. 12(b)(6). The plausibility standard "asks for more than a

sheer possibility that a defendant has acted unlawfully," and "where a complaint pleads facts

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting

*Twombly*, 550 U.S. at 557). "'[N]aked assertions' of wrongdoing" are insufficient to plausibly

state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal

citations omitted).

In resolving a Rule 12(b)(6) motion to dismiss, the court "must accept as true all of the

factual allegations contained in the complaint, and must draw all reasonable inferences [from

those facts] in favor of the plaintiff." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir.

2019) (internal citations omitted). However, a court "need not accept the legal conclusions

drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments."

*Glassman v. Arlington Cty., VA*, 628 F.3d 140, 146 (4th Cir. 2010) (internal citations omitted).

Though the plaintiff is not required to provide evidence to prove the elements of the claim, the

complaint must allege sufficient facts to establish each element. *Coleman v. Maryland Court of

Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of

Maryland*, 566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012).

### A. Count I of Plaintiff's Complaint Alleging A Violation of 42 U.S.C. § 1981 Fails to State a Claim Upon Which Relief May Be Granted.

A plaintiff asserting a claim under § 1981 must sufficiently allege "(1) membership in a

protected class; (2) discriminatory intent on the part the defendant; and (3) interference with the

rights or benefits associated with making and enforcing contracts." *Sparrow v. Bank of Am.*, No. 14-cv-388, 2014 WL 4388350, at *8 (D. Md. Sept. 4, 2014). At trial, a plaintiff may establish a discrimination claim under § 1981 through direct or indirect evidence of discrimination, or by following the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*. *See Abram v. Aerotek, Inc.*, No. CV ELH-20-756, 2020 WL 5653210, at *9 (D. Md. Sept. 23, 2020) (noting that the analysis of § 1981 claims tracks that of Title VII of the Civil Rights Act of 1964) (internal citations omitted). In order to prevail at trial, a plaintiff opting to establish intentional discrimination under the *McDonnell Douglas* approach must first establish a *prima facie* case. *Id.*

In a § 1981 case relating to the purchase of goods or services, a plaintiff must show the following to establish a *prima facie* case of discrimination: (1) she is a member of a protected class; (2) she sought to enter into a contractual relationship with the defendant; (3) she met the defendant's ordinary requirements to pay for and receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) she was denied the opportunity to contract for goods or services that were otherwise afforded to customers that were not members of a protected class. *Williams v. Staples, Inc*. 372 F.3d 662, 667 (4th Cir.2004). Courts within this jurisdiction have applied this test in cases involving banking transactions. *See, e.g., Zeno v. Chevy Chase Bank*, No. CIV. PJM 08-2236, 2009 WL 4738077, at *2 (D. Md. Dec. 4, 2009); *Jimenez v. Wells Fargo, Nat'l Ass'n*, No. CV PWG-16-3721, 2017 WL 1230823, at *6 (D. Md. Apr. 4, 2017).

The Fourth Circuit has held that although a plaintiff is not required to plead facts sufficient to establish a prima facie case of racial discrimination to survive a motion to dismiss, a plaintiff must satisfy the pleading standard set forth in *Iqbal* and *Twombly* by pleading

plausible facts. *Abram* at *10 (citing *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017)). In evaluating a motion to dismiss, the relevant question for the court is whether the plaintiff has stated a "plausible claim for relief." *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'" *Olekanma v. Wolfe,* No. CV DKC 15-0984, 2016 WL 430178, at *2 (D. Md. Feb. 4, 2016) (citing *Iqbal*, 556 U.S. at 679). A complaint which sets forth only bare accusations or speculation is insufficient. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). The pleading standard requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ryan v. McAleenan*, No. CV ELH-19-1968, 2020 WL 1663172, at *8 (D. Md. Apr. 3, 2020) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *Id.* (citing *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), cert. denied, 566 U.S. 937, 132 S.Ct. 1960, 182 L.Ed.2d 772 (2012)).

1. <u>Plaintiff has not sufficiently pled that racial animus was the but-for cause of Harford Bank's alleged actions.</u>

To state a plausible claim for relief under § 1981, Plaintiff must allege a causal link between her race and Harford Bank's denial of her request to cash a check. In *Comcast Corp. v. National Association of African American-Owned Media*, the Supreme Court held that in

order to prevail in a § 1981 claim, the plaintiff must "initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020). A § 1981 claim must do more than allege facts plausibly showing that racial animus was a motivating factor in the defendant's conduct; it must contain sufficient facts to state a plausible claim for relief under the "but-for" causation standard. *Id.* A general recitation of a "parade of horribles" alleging generalized and suspected racial bias is not sufficient to survive a motion to dismiss. *See Gen. Eng'g & Tech. Support Servs. v. Baltimore Gas & Elec.*, No. 8:18-CV-00124-PX, 2019 WL 4016846, at *5 (D. Md. Aug. 26, 2019); *see also Shipley v. Qiao Hong Huang*, No. CV 19-654, 2019 WL 1426308, at *3 (E.D. Pa. Mar. 28, 2019).

In *Hill v. Abercrombie & Fitch*, the court held that the plaintiff failed to set forth facts supporting his allegation that a store employee reported him to mall security as a suspected shoplifter, and a guard approached him and asked him to leave the store based on intentional racial discrimination. *Hill v. Abercrombie & Fitch*, No. ELH-11-00910, 2011 WL 4433573, at *5 (D. Md. Sept. 20, 2011). In that case, the plaintiff contended that "malicious and discriminatory intent" motivated the store's actions, "solely for the reason that the Plaintiff was an African American." *Id.* The court determined that this was a conclusory statement; the mere fact that the plaintiff was African American and the other actors were Caucasian did not form a factual basis showing intentional discrimination. Furthermore, the plaintiff did not support his conclusory allegations with any facts indicating that the store employee identified him as a suspicious person due to his race or that the guard removed him from the store due to his race. Accordingly, this court dismissed the plaintiff's § 1981claim due to his failure to allege that racial animus caused the allegedly wrongful removal of the defendant from the store. *Hill* at *6.

In *Mekuria v. Bank of America*, the plaintiff was a black man of Ethiopian descent and a customer of the defendant bank, who filed a §1981 claim against the bank for terminating his business accounts without explanation. *Mekuria v. Bank of Am.*, 883 F. Supp. 2d 10, 13 (D.D.C. 2011). The U.S. District Court for the District of Columbia granted the bank's motion to dismiss due to the plaintiff's failure to adequately plead that the bank closed his accounts due to racial animus. *Mekuria* at 15. The court held that the plaintiff's conclusions that the bank closed his account due to "unlawful profiling" and flagged him for suspicious activity "solely because of his race and nationality" failed to meet the pleading requirements for a §1981 claim. *Id.* The complaint did not contain any factual allegations supporting an inference of racial discrimination, such as allegations that the tellers at the bank made negative comments to him or treated him in a hostile and inappropriate manner. Therefore, the court concluded, "[a]t the end of the day, Plaintiff's case boils down to an argument that because he was mistreated and because he is black, there must be some connection between the two. Such supposition is not enough." *Id.*

In the present case, Plaintiff fails to plausibly allege that her race was the but-for cause of Harford Bank's refusal to cash her check. The Complaint alleges that Harford Bank "immediately instigated a hostile consumer transaction with Plaintiff by doubting Plaintiff's motives in wanting to cash the check, questioning the check's authenticity, interrogating Plaintiff about where it came from, falsely accusing Plaintiff of cashing a fraudulent check, and ultimately, refusing to cash Plaintiff's paycheck (or even return it to her), all of which were actions by Defendant Harford Bank that were fueled by its unlawful racial animus towards Plaintiff." Compl. ¶ 2. However, she has not pled a single fact to suggest that racial animus was the but-for cause of the teller's actions, or even a cause. Plaintiff has not identified any

negative comments about her race, or any racially discriminatory statements or conduct by Harford Bank, connecting her allegations about Harford Bank's actions to her race.

The allegations in Plaintiff's complaint are easily distinguishable from the more detailed allegations which courts in other jurisdictions have deemed sufficient to withstand a motion to dismiss. *See, e.g., Monroe v. Wells Fargo Bank, N.A.*, No. 18-62697-CIV, 2019 WL 2498698, at *3 (S.D. Fla. Mar. 6, 2019), *report and recommendation adopted*, No. 18-62697-CIV, 2019 WL 2498666 (S.D. Fla. June 13, 2019) (holding that the plaintiff sufficiently alleged racial discrimination by asserting that she was prevented from cashing a check when other white customers were permitted to cash nearly identical checks from the same employer, the bank accused her of check fraud although the accountholder personally authenticated the check, and the teller communicated racial bias through her "facial expression, body language, tone, language, and attitude").

Moreover, Plaintiff cannot rely on conclusory allegations of a general practice of discrimination to sufficiently allege that racial discrimination was the but-for cause of Harford Bank's actions. *See Iwebo v. Sheppard Pratt Health Sys., Inc*., No. CV BPG-19-3008, 2020 WL 4748579, at *6 (D. Md. Aug. 14, 2020). *Palmetto Civil Grp. LLC v. H.G. Reynolds Co., Inc.* is instructive here. In *Palmetto,* a South Carolina federal court held that the plaintiffs did not allege facts to show a pattern of discrimination by alleging that the defendant "engaged in a pattern of illicit and reprehensible racial discrimination for the purpose of private financial gain and greed" and failed to enter a contract with a minority subcontractor for "illegal and illicit racially motivated purposes." *Palmetto Civil Grp. LLC v. H.G. Reynolds Co., Inc.,* No. 2:18-CV-02572-DCN, 2019 WL 234569, at *4 (D.S.C. Jan. 16, 2019). The court noted that these were conclusory statements, and the plaintiffs did not allege any facts to show that the

defendant engaged in a pattern of discrimination. *Id.* The court also noted that the plaintiffs did not provide any examples of the defendant treating minority subcontractors differently from nonminority subcontractors. *Id.*

Here, Plaintiff's allegations of discriminatory practices are comparable to the conclusory allegations in *Palmetto*. In support of her claim that Harford Bank discriminated against her due to race, Plaintiff alleges that Harford Bank has established two separate processes for "handling, treating, encountering, and dealing with its customers on a day-to-day basis: one for white customers and a separate, but not equal, process for its customers of color. Compl. ¶ 28. The Complaint alleges that these separate processes deny customers of color the same opportunities as Harford Bank's white customers to "be treated with dignity, and enrich their financial roots within a trusted banking system that will support them and respect the fiduciary duty to place the customer's interests above Defendant's own." Compl. ¶ 29.

With regard to Plaintiff's allegation of a separate process at Harford Bank for white customers to apply for loans and lower their mortgages, she has not pled any facts supporting that allegation, nor has she connected a discriminatory loan or mortgage policy to Harford Bank's refusal to cash her check. Furthermore, Plaintiff's allegations that Harford Bank denies its customers of color the opportunity to be treated with dignity and to "enrich their financial roots" is similarly conclusory, and so threadbare, that it is unclear whether the alleged disparate treatment is even covered under § 1981.[2]

Plaintiff has also concluded, without alleging a single supporting fact, that Harford Bank's "white customers . . . receive high-quality customer service, fair consumer transactions,

---

[2] Harford Bank vehemently disputes these offensive allegations in the Complaint as pure fabrication but understands that this dispute is not to be considered by the Court on a motion to dismiss.

and are treated with basic dignity and respect." Compl. ¶ 26. As in *Palmetto*, where simply alleging that the defendant "engaged in a pattern of illicit and reprehensible racial discrimination" did not state a claim for which relief may be granted, Plaintiff's § 1981 claim lacks the factual allegations that are required to allege that racial animus was the but-for cause of the teller's conduct toward Plaintiff. *Palmetto* at *4.

<blockquote>

a. *Harford Bank's duty to protect itself and its customers from fraud is an obvious, alternative explanation for the actions of its teller.*

</blockquote>

A complaint does not plausibly give rise to the inference of intentional discrimination when there is an obvious, alternative explanation for a defendant's conduct that is not based on racial animus. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin*., 780 F.3d 582, 588 (4th Cir. 2015). This is particularly true when the factual allegations in a complaint do not plausibly suggest that any discriminatory conduct occurred. *Id. See also Hill* at *5 (holding that the plaintiff did not adequately plead racial discrimination when the complaint's allegations showed that the defendant's alleged conduct was consistent with suspecting the plaintiff of shoplifting and not racial animus).

In the present case, Plaintiff has not only failed to plead any facts supporting a reasonable inference that racial discrimination was the but-for cause of Harford Bank's refusal to cash her check, but her Complaint offers an obvious, alternative explanation for the action. Plaintiff alleges that the teller informed her the color of the check was "off," stated her belief that Plaintiff was committing "fraud," and called the police." Compl. ¶ 20. Plaintiff's allegations indicate that the teller's belief that Plaintiff's check appeared fraudulent on its face prompted her to refuse to cash the check and report the potentially fraudulent activity to the police. This decision had nothing to do with racial animus.

A bank that accepts and pays a forged or altered check may be liable for the loss to the

accountholder.  *See, e.g.*, *Silver v. Wells Fargo Bank, N.A.*, No. CV MJG-16-382, 2016 WL 6962862, at *4 (D. Md. Nov. 29, 2016); *Hartford Fire Ins. Co. v. Maryland Nat. Bank, N.A.*, 341 Md. 408, 414, 671 A.2d 22, 24–25 (1996).  "It is an established rule that when a bank receives money on deposit, it impliedly contracts to pay the depositor's checks only to the persons to whom they are made payable or upon their genuine indorsements. A bank on which a check is drawn is bound at its peril to identify the payee and to ascertain that the indorsement on the check is genuine." *John Hancock Mut. Life Ins. Co. v. Fid.-Baltimore Nat. Bank & Tr. Co.*, 212 Md. 506, 515, 129 A.2d 815, 821 (1957) (internal citations omitted).  The potential liability to Harford Bank for paying a check that appeared facially suspect is an obvious explanation for the teller's refusal to cash Plaintiff's check that is unrelated to intentional racial discrimination.  As Plaintiff alleged in her complaint, the check she presented to Harford Bank listed her employer, an accountholder at Harford Bank, as the payor.  Compl. ¶ 18.  As such, Harford Bank had a contractual duty to its customer to ascertain whether the check presented by Plaintiff was genuine prior to debiting its customer's account.

In addition to the potential liability Harford Bank could incur for cashing a fraudulent check, under Maryland law, any person who knowingly, willfully, and with fraudulent intent possesses a counterfeit check is guilty of a misdemeanor, and a person who causes or assists in counterfeiting a check is guilty of a felony. Md. Code Ann., Crim. Law § 8-601.  Plaintiff has not alleged any facts in her complaint that the teller's decision to call the police was motivated by racial animus.  To the contrary, the facts stated in the Complaint suggest that the teller believed that Plaintiff's check was fraudulent due to its facial irregularities.  She first questioned Plaintiff about the check, pointed out the irregularities in the check's coloring which indicated fraud, told Plaintiff that she believed the check was fraudulent, and, since possession

of a counterfeit check is a crime, called the police.

    2.   <u>Plaintiff has not sufficiently alleged that she was denied an opportunity to contract that was otherwise given to white customers.</u>

Plaintiff's Complaint further fails to plead a cognizable claim for relief under § 1981 because it pleads no facts establishing that other similarly-situated members of a different race were not subjected to the alleged discrimination. In *Gennell v. Denny's Corp*, the plaintiff claimed a restaurant discriminated against her when a manager followed her out of the restaurant and threatened to call the police after she left without paying for her incorrectly-filled order. The court found that the plaintiff did not demonstrate a *prima facie* case because she did not allege that other similarly-situated patrons of a different race had orders incorrectly filled then corrected, or tried to leave the restaurant without paying and were not followed and not threatened with a call to the police. *Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 559 (D. Md. 2005). *See also Stone v. Baltimore Washington Hotel/Vista Host Inc.*, No. CV GLR-15-2272, 2016 WL 8652294, at *2 (D. Md. June 9, 2016), *aff'd sub nom. Stone v. Baltimore Washington Hotel*, 672 F. App'x 284 (4th Cir. 2017).

A federal district court in Louisiana recently dismissed a plaintiff's § 1981 claim against a bank, finding that the complaint's failure to allege that non-minority individuals who were similarly situated were treated differently did not contain plausible allegations of intentional discrimination. *Pullins v. Hancock Whitney Bank*, No. CV 19-00006, 2021 WL 96246, at *6-7 (M.D. La. Jan. 11, 2021). In *Pullins*, the plaintiff opened a new account at the defendant bank and deposited into her account a settlement check issued by her attorney. Later that same day, she visited another of the bank's locations and attempted to withdraw all of the funds from her account but was informed that there would be a 24-hour hold before the funds were available. The plaintiff alleged intentional racial discrimination, claiming that she was the only African

American customer in the bank "who was singled out and whose transaction appeared suspicious and in need of investigation," that the bank employees were dishonest about "red flags" that supposedly prompted the hold, and that the employees yelled at her in front of other customers and told her she could "get out" if she did not want help. *Id.*

The *Pullins* court dismissed the plaintiff's claims, finding that the allegations of intentional racial discrimination were "largely subjective and insufficient to state a claim." *Pullins* at *7. Specifically, the plaintiff did not allege that there were similarly-situated, non-minority bank customers who were permitted to withdraw funds from a newly-opened account on the same day the customer deposited them. The court noted, "[a]n allegation that non-minority customers sought the same services – being provided new account funds prior to the requisite 24-hour delay – and received different treatment/results would allow an inference of race discrimination. Plaintiff makes no allegations regarding the nature of the services sought by the allegedly similarly situated non-minority customers; thus, there are no factual allegations to support Plaintiff's claim that her race motivated the alleged interference with her contractual rights." *Id.*

When pointing to a comparator to support a claim of discrimination, a plaintiff must not only identify the comparator but must "'establish a plausible basis for believing [the comparator was] actually similarly situated.'" *Asi v. Information Management Group*, 2019 WL 4392537, *6 (D.Md. September 13, 2019) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010)).

Here, as in *Pullins*, Plaintiff does not allege any facts to support a claim that any non-minority individuals sought the same services – the cashing of a check with suspicious coloring – that Plaintiff was denied. In fact, she does not point to any other customers that she observed

in the drive-thru lane at Harford Bank either before or after she attempted to cash her check. She has not alleged that Harford Bank did not question the authenticity of checks with "off" coloring presented by similarly-situated white patrons of Harford Bank, or that Harford Bank cashed checks with suspect coloring presented by non-minority Harford Bank patrons. Plaintiff has not pled any facts even alleging that she was treated differently from other bank customers or potential customers, much less that she was treated differently because of her race.

Plaintiff's Complaint merely asserts that she was "unfairly disregarded as compared to Defendant's white customers." Compl. ¶ 26. Plaintiff does not identify a specific comparator, instead asserting that unidentified white customers receive better treatment. Such scant allegations do not amount to a cognizable claim that Plaintiff was denied the opportunity to contract for services afforded to similarly-situated white individuals. *See Zeno v. Chevy Chase Bank*, No. CIV. PJM 08-2236, 2009 WL 4738077, at *2 (D. Md. Dec. 4, 2009).

3. Plaintiff has not sufficiently alleged that she was treated in a markedly hostile manner.

In *Callwood v. Dave & Buster's, Inc.*, the court proposed alternative guidelines for establishing a prima facie discrimination case under § 1981 for situations occurring outside of an employment context. The test has not been expressly adopted by the Fourth Circuit, and even the *Callwood* court did not specifically identify when it should be applied. *See Callwood v. Dave & Buster's, Inc.,* 98 F.Supp.2d 694, 704–08 (D.Md.2000) (suggesting at different points that the test be applied to cases involving "retail food service enterprises," "restaurant settings," "public accommodations," and "retailers.") *Callwood* permits plaintiffs to make out a *prima facie* case of discriminatory intent by showing that "they did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that (a) they were deprived of services while

15

similarly situated persons outside the protected class were not deprived of those services, and/or (b) they received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." *Callwood* at 707. The *Callwood* test purportedly accounts for the difficulty in obtaining evidence of similarly-situated people outside of a protected group who were treated differently in a public accommodations context. *Callwood* at 706.

The Fourth Circuit has declined to apply the *Callwood* test when comparator evidence was available and has not expressly adopted it, even in the absence of comparator evidence. *See Williams v. Staples, Inc.*, 372 F.3d 662, 668 (4th Cir. 2004) ("We decline to adopt the *Callwood* elements in this case"); *Painter's Mill Grille, LLC v. Brown*, No. CIV.A. RDB-11-1607, 2012 WL 576640, at *6 (D. Md. Feb. 21, 2012), *aff'd*, 716 F.3d 342 (4th Cir. 2013) (discussing, but not applying, the *Callwood* test); *Gilyard v. Northlake Foods, Inc.*, 367 F. Supp. 2d 1008, 1013–14 (E.D. Va. 2005) ("The Court sees no need to resort to an alternative approach and elects to utilize the *Williams v. Staples* elements of the prima facie case").

This Court is not required to apply the *Callwood* formulation to the case at hand and should apply the *prima facie* framework delineated in *Williams* given the unique differences between a bank setting and the retail/restaurant setting that *Callwood* contemplates. Since *Callwood* was decided, multiple cases within the Fourth Circuit have applied the *Williams* factors to § 1981 claims arising in a banking context. *See, e.g., Zeno v. Chevy Chase Bank,* No. PJM–08–2236, 2009 WL 4738077, at *1–2 (D. Md. Dec. 4, 2009); *Jimenez v. Wells Fargo, Nat'l Ass'n*, No. CV PWG-16-3721, 2017 WL 1230823, at *6 (D. Md. Apr. 4, 2017); *Boardley v. Household Fin. Corp. III,* 39 F. Supp. 3d 689, 710 (D. Md. 2014).

Even assuming *arguendo* that the *Callwood* factors applied in this case, Plaintiff still

does not state a claim upon which relief may be granted, because she has failed to plead with particularity that she was treated in a markedly hostile manner. *Callwood* defined conduct as "markedly hostile" when it is "(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Callwood* at 708.

A federal court in Michigan applying the *Callwood* factors found that a bank's closure of the plaintiffs' bank accounts was not markedly hostile when the plaintiffs engaged in a pattern of large cash withdrawals that appeared designed to evade federal reporting requirements (known as "structuring"). *JM Adjustment Servs., LLC v. J.P. Morgan Chase Bank, N.A.*, No. 16-10630, 2018 WL 1168940, at *7 (E.D. Mich. Mar. 6, 2018). The court noted that structuring is a federal crime, and banks that fail to monitor, or respond to, suspected structuring transactions face civil, regulatory, and criminal penalties, in addition to damage to their reputations. *JM* at *5. Therefore, the bank's decision to close the plaintiffs' accounts, while having a negative financial impact due to lost profits, was not profoundly contrary to its financial interests given the risk involved with structuring. *Id.* Furthermore, closing the accounts was an appropriate response, within accepted business norms, in light of the concerns about reputational damage. Finally, the bank's decision was not so arbitrary on its face as to support a rational inference of discrimination. The court noted that the bank's decision was not "baseless," since it responded to concerns about structuring. *JM* at *6.

Plaintiff has not alleged that the denial of her request to cash a check that appeared facially altered was profoundly contrary to Harford Bank's financial interests. As in *JM*, Harford Bank's refusal to cash a check that was potentially fraudulent was consistent with its

responsibility to implement effective anti-fraud programs and to identify and respond to possible fraudulent activity. Allowing individuals to cash altered checks could expose Harford Bank to legal action and reputational damage. Furthermore, Plaintiff did not allege facts to support that Harford Bank's refusal to cash Plaintiff's check was so far outside of widely-accepted business norms that it gave rise to a rational inference of discrimination. Given the potential penalties faced if Harford Bank cashed the check and it did turn out to be altered, Harford Bank's response was reasonably within accepted business norms. Finally, Plaintiff has not sufficiently alleged that Harford Bank's conduct was so arbitrary on its face as to support a rational inference of racial discrimination. Harford Bank's decision was not baseless but resulted from concerns about fraud. The teller's refusal to cash the check was hardly arbitrary, given the severe consequences that Harford Bank could have faced for failing to investigate and identify possible fraud against one of its customers.

Harford Bank strives to provide the best possible customer service to its patrons. While it is unfortunate that Harford Bank did not meet Plaintiff's expectations, her disappointment is not actionable. The teller's conduct, as alleged in the Complaint, falls far short of situations that courts have found to be markedly hostile. *See, e.g., Leach v. Heyman*, 233 F.Supp.2d 906, 910 (N.D.Ohio 2002) (employee waited until after the customer had completed his purchase and then called him a racial epithet); *Brooks v. Collis Foods, Inc.*, 365 F. Supp. 2d 1342, 1358–59 (N.D. Ga. 2005) (black customers received service in a markedly hostile manner when waitress spilled orange juice on them, flung straws at them, and sang "When the Saints Go Marching In" and "Swing Low Sweet Chariot"); *Turner v. Wong*, 363 N.J. Super. 186, 196–97, 832 A.2d 340, 345–46 (App. Div. 2003) (owner of a donut shop called plaintiff racial epithets multiple times and forced her to leave the store when she would not pay for a stale donut).

The anxiety Plaintiff apparently felt when she was unable to cash her paycheck is evident in her Complaint. However, her allegations do not nudge her discrimination claim from conceivable to plausible, and that is the standard that a court must apply when evaluating whether to grant a motion dismiss under Rule 12(b)(6). *Iwebo v. Sheppard Pratt Health Sys., Inc.*, No. CV BPG-19-3008, 2020 WL 4748579, at *6 (D. Md. Aug. 14, 2020). As such, Count I fails to state a claim upon which relief may be granted and should be dismissed.

### B. Count II of Plaintiff's Complaint Alleging A Violation of 15 U.S.C. § 1691 Fails to State a Claim Upon Which Relief May Be Granted Because the Statute Does Not Cover Cashing Checks.

Plaintiff has also alleged that Harford Bank violated 15 U.S.C. § 1691, the Equal Credit Opportunity Act ("ECOA"), which prohibits a creditor from discriminating against an applicant with respect to any aspect of a credit transaction on the basis of certain characteristics, including race, color, religion, national origin, sex, marital status, or age. Under 15 U.S.C. § 1691a(d), "credit" is "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." The essence of a credit transaction is the "right to defer payment on a debt or other obligation." *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 203 (4th Cir. 2002).

A refusal to cash a check is not a right to defer payment of a debt. Pursuant to Section 3-104 of the Maryland Commercial Law Code, which is based on the Uniform Commercial Code, a check is a negotiable instrument, payable on demand. Md. Code Ann., Com. Law § 3-104(c). A check "is not a credit transaction." *See Jordan v. Chang*, 35 Va. Cir. 402 (1995) (citing the Uniform Commercial Code in holding that a check is not a credit transaction covered under the ECOA). In *Jackson v. Bank of America*, the U.S. District Court for the Central District of California dismissed a claim under the ECOA stemming from a bank's failure to

cash $720 million worth of checks. The court reasoned, "Plaintiff has not shown that BoA's rejection of his check constitutes a 'credit transaction' under the ECOA: the statute defines 'credit' as 'the right granted by a creditor to a debtor to defer a payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor.' 15 U.S.C. §§ 1691a(d). However, the allegations in the Complaint do not show that BoA's conduct had any relation to a debt, whether in allowing Plaintiff to defer payments or incur debt." *Jackson v. Bank of Am.*, No. EDCV162522JGBSPX, 2017 WL 5635031, at \*2 (C.D. Cal. Mar. 9, 2017). *See also Pullins v. Bank, No. CV 19-00006, 2020 WL 1450560,* at \*4 (M.D. La. Mar. 25, 2020) (stating that "[i]n its research the Court found no authority for the proposition that cashing a check is a credit transaction as contemplated by the ECOA").

Plaintiff has therefore failed to state a claim for relief under the ECOA by alleging that Harford Bank discriminated against her in refusing to cash a check, because cashing a check is not a "credit transaction" for purposes of the ECOA.

## IV.    CONCLUSION

Harford Bank will not tolerate discrimination in any form. However, there was simply no discrimination in this encounter. Harford Bank's employees acted responsibly to protect the assets of its depositor. People entrust their money to Harford Bank, and Harford Bank will continue to exercise the financial discipline required of a bank and expected by its customers.

WHEREFORE, Defendant, Harford Bank, requests that this Court enter an order dismissing Plaintiff's Complaint and granting such other and further relief as this Court deems just, equitable and proper.

Respectfully submitted,

/s/ _____

Scott H. Marder (Bar No. 28789)
shmarder@tandllaw.com
Jennifer Ciarrocchi (Bar No. 20101)
jciarrocchi@tandllaw.com
THOMAS & LIBOWITZ, P.A.
25 S. Charles Street
Suite 2015
Baltimore, Maryland 21201
Tel:    410-752-2468
Fax:    410-752-0979

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _19th_ day of _February_, 2021, a copy of the foregoing

Memorandum of Points and Authorities in Support of Motion to Dismiss was efiled to:

HILLIARD MARTINEZ GONZALES LLP
Robert C. Hilliard
Texas State Bar No. 09677700
bob@hmglawfirm.com
719 S. Shoreline Boulevard
Corpus Christi, Texas 78401
T: (361) 882-1612
F: (361) 882-3015

BEN CRUMP LAW, PLLC
Ben Crump
Florida State Bar No. 72583
court@bencrump.com
122 S. Calhoun Street
Tallahassee, Florida 32301
T: (850) 224-2020

COLLINS LEGAL GROUP, LLC
Tiffani Collins, Esq.
Maryland State Bar No. 0812180179
Federal Bar No. 29274
20 S. Charles Street, Suite 901
Baltimore, Maryland 21201
T: (410) 462-4529
F: (410) 995-7200

/s/_____
Jennifer E. Ciarrocchi