IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHEIRA BROWN,

*Plaintiff*,

v.                                                    Civil Action No. ELH-21-0096

HARFORD BANK,

*Defendant*.

**MEMORANDUM OPINION**

Plaintiff Sheira Brown has filed suit against defendant Harford Bank (the "Bank"), alleging racial discrimination stemming from an incident in which the Bank refused to cash a check presented by plaintiff.  ECF 1 (the "Complaint"); ECF 12 (the "Amended Complaint").  The Amended Complaint lodges four claims under federal and State law: racial discrimination, in violation of 42 U.S.C. § 1981 (Count I); violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. (Count II); conversion (Count III); and "Negligent, Reckless and/or Intentional Infliction of Emotional Distress" (Count IV).  ECF 12, ¶¶ 39-60.[1]

Defendant has filed a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 33 (the "Motion").  Plaintiff opposes the Motion.  ECF 37 (the "Opposition"). And, defendant has replied.  ECF 38 (the "Reply"). Defendant also filed a "Motion for Leave to File Physical Exhibit" (ECF 35), namely a USB flash drive that allegedly contains a video of the incident.  The Court granted that motion.  ECF 36.

---

[1] Count IV is labelled as "Count V" in the Amended Complaint. *See* ECF 12 at 14. This appears to be a typographical error, as this count follows Count III and there is otherwise no "Count IV." Thus, I will refer to this count as "Count IV."

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I. Factual Background[2]

Plaintiff is an African American woman.  ECF 12, ¶¶ 1, 12.  At the relevant time, she worked as a waitress at Olive Branch Italian Grill.  *Id*. ¶ 2.  Plaintiff is also the mother of two daughters.  At the time of the incident, one was seven years of age and the other was ten months old.  *Id*. ¶ 10.

Harford Bank is a "Maryland banking institution."  *Id*. ¶ 13.  According to the Complaint, "[w]ithin the past few years" the Bank has claimed over $365 million in assets, and currently has more than 80 employees across eight branches.  *Id.* ¶ 13.  On its website and through its social media presence, the Bank "promotes itself as a fair and equitable financial institution," proudly claiming that "'community' is its strength."  *Id.* ¶ 14.

The restaurant at which plaintiff worked had a commercial banking account at a branch of the Bank located on Riviera Drive in Joppa, Maryland.  *Id*. ¶¶ 1, 2, 20.  On March 20, 2020, plaintiff drove with her baby to the Bank branch on Riviera Drive in order to cash a payroll check that she had received from her employer.  *Id*. ¶ 17.  Although the branch is roughly a 30-45 minute drive from plaintiff's home, Brown drove out of her way to that location because her employer had an account at that branch of the Bank, and she sought to cash the check as quickly as possible in order to purchase milk for her younger child.  *Id.* ¶¶ 17, 18, 20, 27.

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

A photograph of the check is included in the Amended Complaint. *Id.* ¶ 19. Plaintiff asserts that it was a "*valid* payroll check" in the amount of $90.94. *Id.* (emphasis in original). And, plaintiff was in lawful possession of the check. *Id.*

Plaintiff pulled into a drive-through line to cash her check. *Id.* ¶ 21. According to the Amended Complaint, defendant had "absolutely no reason to question the authenticity of the check, as the check was drawn from the Harford Bank and the Joppa branch was the employer's primary banking institution." *Id.* ¶ 20. Nevertheless, "the Caucasian bank teller . . . immediately instigated a hostile consumer transaction." *Id.* ¶ 21. The Amended Complaint identifies the teller as "Gail," and alleges that "at all relevant times" she was an employee of the Bank. *Id.* ¶¶ 21, 22. The teller "aggressively" asked plaintiff where the check was from, to which plaintiff responded by stating that "the paycheck was hers and she received it from her employer, Olive Branch Italian Grill, who was also a customer of Defendant's bank." *Id.* ¶ 21.

The teller told plaintiff that the "'color of her paycheck was off.'" *Id.* ¶ 22 (boldface omitted). The Amended Complaint alleges that the "color" comment was actually "a comment" about plaintiff's skin color. *Id.* Furthermore, the teller supposedly told plaintiff, "'this [is not] you, [you are] committing fraud, and [you are] going to jail." *Id.* (alterations in original; boldface omitted). The teller then "took the check and locked it in the bank's vault," "confiscated" plaintiff's I.D., accused plaintiff of cashing a fraudulent check, and "called the police." *Id.*

During the teller's conversation with plaintiff, the teller remarked to another employee of defendant, "they are always lying," which plaintiff alleges referred to African Americans. *Id.* ¶ 24 (boldface omitted). And, when speaking with the police, the teller said that "'a black woman was attempting to fraudulently cash a check,' instead of simply saying a customer .. . ." *Id.* (boldface

omitted).   At the end of the interaction, the teller repeatedly said "Good Bye" to plaintiff in a "derogatory tone of voice."  *Id.* (boldface omitted).[3]

Plaintiff asserts that the confiscation of her I.D. was additional evidence of racially motivated intent, "since there was no reason to confiscate an ID other than to show other bank employees and law enforcement that Ms. Brown was African American."  *Id.* ¶ 23.  She adds, *id.*: "Such practices would not have been followed by the [B]ank employees if the customer was Caucasian."  *Id.*

Two police officers responded to the Bank: "a Caucasian officer and an African American officer."  *Id.* ¶ 26.  When these "local authorities" arrived, "they verified that plaintiff's check was *not* fraudulent and demanded the teller give the paycheck back to Plaintiff."  *Id.* ¶ 25.  And, the "Harford Manager confirmed that there was no issue regarding the 'color' of the check."  *Id.* ¶ 25.[4]  However, the teller refused to return the check, claiming she was unable to do so because the Bank's vault was locked.  *Id.* ¶ 27.  The Bank's regional manager was contacted by the police to open the vault, "but the vault could not be opened."  *Id.*

Plaintiff asked the teller to return her I.D., but the teller refused.  *Id.* ¶ 26.  The African American officer made the same request of the teller, and the teller again refused.  *Id.*  Yet, the teller returned plaintiff's I.D. to the white police officer when he requested the I.D., and he then returned the I.D. to plaintiff.  *Id.*  Thus, Brown asserts: "Plaintiff was forced to leave the bank without her money or her check."  *Id.*  Because plaintiff could not retrieve the check that day and was unable to cash it anywhere else, and because she had left home without any other money, the

---

[3] Plaintiff adds that the "teller would not have acted that way to a person that [sic] was not African American."  However, she does not include any facts to support the assertion.

[4] The Amended Complaint refers to a "Harford Manager" (ECF 12, ¶ 25) and a Harford "regional manager."  *Id.* ¶ 27. It appears that these are references to the same person.

police who responded to the incident took her to a nearby store and purchased milk for plaintiff's child using their own money. *Id.* ¶ 28.

Plaintiff was required to return to the Bank branch the next day to retrieve her check, which was an inconvenience. *Id.* ¶ 27. When she arrived, Bank employees refused to allow her to enter the Bank, "falsely telling her that the bank was closed and she needed to do business through the window. . . ." *Id.* (boldface omitted). However, plaintiff saw a customer who was not African American enter the Bank during the same period. *Id.*

Further, plaintiff alleges that all of the teller's actions towards her as part of this incident "were racially motivated and would not have been taken if the customer was not African American." *Id.* ¶ 22. She asserts that the Bank "improperly refus[ed] to cash Plaintiff's paycheck based on Plaintiff's race and the color of her skin" (*id.* ¶ 5), and that she "was subjected to a barrage of racially charged accusations, made to feel ashamed simply because she was doing what millions of Americans do every day—cash legal checks from their employers for work that they performed." *Id.* ¶ 4.

Plaintiff maintains that, on the basis of her race and the color of her skin, she was "unlawfully denied and deprived" of the same banking, credit, and commercial opportunities as plaintiff's "white counterparts." *Id.* ¶ 5. According to plaintiff, she was "racially discriminated against" by the Bank, in contrast to "white customers, who receive high-quality customer service, fair consumer transactions, and are treated with basic dignity and respect." *Id.* ¶ 29. The Amended Complaint alleges: "Specifically, the employees at Harford [Bank] engaged in racial profiling of African Americans trying to cash checks and did not engage in the same conduct with customers who were not African American. Upon information and belief, this branch had not called the

police and engaged in the same type of conduct for customers attempting to cash checks under $100 who were Caucasian." *Id*.

Further, the Amended Complaint asserts that defendant cannot claim that it was "honoring their [sic] duty to their customers to prevent fraud and criminal activity." *Id.* ¶ 30.  In particular, the Amended Complaint notes that plaintiff's check was issued by one of the Bank's customers, and that the customer maintained its business account at the Riviera Drive branch.  *Id.*  Therefore, plaintiff maintains that any claim that defendant was attempting to prevent fraud is "mere pretext for unlawful racial discrimination." *Id*.

The Amended Complaint makes a series of broader allegations as to the Bank's practices, without citing any specific facts or incidents, aside from what is described above.  For example, plaintiff alleges that defendant "promotes racism in its institutions, fosters a culture of racial-profiling, and engages in unlawful race-based discrimination towards innocent visitors, and/or potential banking customers." *Id.* ¶ 15.

Moreover, the Amended Complaint alleges that defendant has developed two distinct "processes for handling, treating, encountering, and dealing with its customers on a day-to-day basis: one for white customers and a separate, but not equal, process for customers of color." *Id.* ¶ 32.  Plaintiff asserts that defendant "treats people of color as inferior," *id.*, and denies customers of color "the same opportunities" as white customers when cashing checks.  *Id*. ¶ 33.  Plaintiff describes this conduct as "the epitome of racial discrimination." *Id.* ¶ 32.

As a direct and proximate result of defendant's wrongful acts, plaintiff alleges that she has sustained injuries and damages, including but not limited to "loss of earnings and earning capacity, loss of career opportunities, outrage and humiliation, mental anguish, anxiety about their [sic]

future, physical and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life." *Id.* ¶ 46; *see also id.* ¶¶ 34, 35, 55.

Additional facts are included in the Discussion.

## II. Standard of Review

### A.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil

actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304-05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to

accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated

into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  In contrast, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

And, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."  *Goines*, 822 F.3d at 167.  "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true."  *Id.*

Moreover, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  *Goines,* 822 F.3d at 166

(citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

**B.**

The Bank asks the Court to consider a video submitted via a USB flash drive (ECF 35), which the Bank describes as "authentic."  ECF 33 at 20.  The video was posted on social media, apparently by plaintiff, and consists of her narration of the alleged incident.  The Bank argues that statements made by plaintiff in this video support its contention that there was an "obvious,

alternative explanation" for its conduct, establishing that it "is not based on racial animus." *Id.* at 18.

Defendant contends that the Court may consider the video at the Rule 12(b)(6) stage because it was incorporated into, or is integral to, the Amended Complaint. *Id.* at 19-20; ECF 38 at 2-6. Nevertheless, the Bank does not seek to convert the motion to one for summary judgment. ECF 38 at 5-6.

In plaintiff's view, defendant seeks improperly to convert its Motion to one for summary judgment. ECF 37 at 10-14. Furthermore, she asserts that the video is not authenticated and contains "multiple layers of hearsay." *Id.* at 14.

In support of defendant's contention that the video was incorporated into the Amended Complaint, the Bank points out that the Amended Complaint states the following in a footnote: "A significant portion of the events were captured on camera and are posted on social media (most of which went viral), stringing countless hashtags, such as: #discrimination #harfordcounty #harfordbank, among others." ECF 12 at 9 n.4. But, a mere reference to the alleged incident having been captured on video and posted on social media is not tantamount to incorporating the video into the Amended Complaint. Moreover, most of the video consists of plaintiff recounting the events to the camera, after the fact. Only a small portion of defendant's video could be described as capturing the alleged events on camera.

Defendant also argues that the video is integral to the Complaint because plaintiff "specifically pled the video as support for her assertion that Harford Bank discriminated against her because of her race." ECF 38 at 3. As noted, to be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 (emphasis in original) (citation

omitted).  However, the sole reference to the video in a footnote of the Amended Complaint comes nowhere close to meeting that standard.  *See* ECF 12 at 9 n.4.

To be sure, the allegations made by plaintiff in the video buttress those contained in the Amended Complaint.  That is, the video contains information that, if true, might support plaintiff's legal claims.  However, nothing in the video "gives rise to the legal rights" plaintiff is asserting in the Amended Complaint.  Nor is the video integral to the Complaint.  Plaintiff mentions the video once in a footnote, indicating that the alleged incident was captured on video.

In urging the Court to consider the video, defendant relies, *inter alia*, on *Zsigray v. County Comm. of Lewis Cty.*, 709 Fed. App'x 178 (4th Cir. 2018).  In *Zsigray*, the Fourth Circuit held that the district court did not err in considering, at the Rule 12(b)(6) stage, a video that was not included with the plaintiff's Complaint but "to which Zsigray referred several times to authenticate his version of events."  *Id*. at 179.  However, the circumstances of *Zsigray* are very different from those presented here.  As the district court's opinion in *Zsigray* makes clear, on numerous occasions Zsigray explicitly referenced in the Complaint a specific video to support his version of events and rebut alternate explanations for the incident in question.  *See Zsigray v. County Comm. of Lewis Cty.*, No. 2:16–CV–64, 2017 WL 462011, at *3 (N.D. W. Va. Feb. 2, 2017), *aff'd*, 709 Fed. App'x 178.  Indeed, the video "provide[d] almost all of the plaintiff's substantive basis for his claims."  *Id*. at *3.  By comparing plaintiff's isolated reference to the video to the facts in *Zsigray*, defendant refutes its argument.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018).  Accordingly, I will

disregard the video and consider the Motion, without the video, as a motion to dismiss. *See Fisher v. Md. Dep't of Public Safety and Correctional Services*, JFM-10-0206, 2010 WL 2732334, at *3 (D. Md. July 8, 2010) ("If a defendant attaches non-integral documents to a motion to dismiss, the simplest course for a court to take is to disregard them.").

## III. Discussion

As noted, the Amended Complaint lodges four counts: 42 U.S.C. § 1981; the Equal Credit Opportunity Act; conversion; and "Negligent, Reckless and/or Intentional Infliction of Emotional Distress," which I refer to as the "Emotional Distress" claim. The Motion argues that the Amended Complaint fails to state a claim with respect to the § 1981, ECOA, and Emotional Distress claims, but does not attack the conversion claim. ECF 33 at 8-32. In addition, the Motion maintains that dismissal should be with prejudice, and that if the Court dismisses plaintiff's federal law claims, it should decline to exercise supplemental jurisdiction over plaintiff's State law claims. *Id*. at 32-36.

Plaintiff's Opposition addresses the Bank's arguments as to her § 1981 and Emotional Distress claims, but does not rebut defendant's contention as to the ECOA claim. ECF 37 at 15-29. But, if the federal law claims are dismissed, plaintiff asks the Court to remand this matter to state court. *Id*. at 30.[5]

### A. 42 U.S.C. § 1981

### 1.

The Amended Complaint asserts that the Bank's conduct towards plaintiff constituted racial discrimination, in violation of 42 U.S.C. § 1981. *See* ECF 12, ¶¶ 39-46. Section 1981 of 42

---

[5] Defendant notes that, because the case was not removed from State court to federal court, the request for a remand "has no legal basis . . . ." ECF 38 at 15.

U.S.C. grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  "Although Section 1981 does not explicitly use the word 'race,' the Supreme Court has construed the statute to ban all racial discrimination in the making of public and private contracts."  *Nnadozie v. Genesis Healthcare Corp.*, 730 Fed. App'x 151, 156 (4th Cir. 2018) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987)).

The phrase "make and enforce contracts" "embrace[s] all phases and incidents of the contractual relationship . . . ."  *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994).  Moreover, § 1981 is applicable in the context of goods and services, including banking.  *See, e.g.*, *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); *Jimenez v. Wells Fargo, N.A.*, PWG-16-3721, 2017 WL 1230823, at *5 (D. Md. Apr. 4, 2017); *Sparrow v. Bank of America, N.A.*, JFM-14-0388, 2014 WL 4388350, at *8 (D. Md. Sept. 4, 2014); *Boardley v. Household Finance Corp. III*, 39 F. Supp. 3d 689, 710 (D. Md. 2014); *Zeno v. Chevy Chase Bank*, PJM-08-2236, 2009 WL 4738077, at *2 (D. Md. Dec. 4, 2009).

"To succeed on a § 1981 claim, 'a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest.'"  *Nadendla*, 24 F.4th at 305 (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)).  Furthermore, "[t]o prevail, a [§ 1981] plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, ___ U.S. ___, 140 S. Ct. 1009, 1019 (2020).  In *Comcast Corp.*, 140 S. Ct. at 1017-19, the Supreme Court clarified that § 1981 employs a but-for causation standard, as opposed to the looser "motivating factor" test used , for example, in the Title VII employment discrimination context.  *See Gary v.*

*Facebook, Inc.*, 822 Fed. App'x 175, 180 (4th Cir. 2020) (noting that in *Comcast Corp.* "the Court held that a § 1981 plaintiff must prove that race was a but-for cause of the plaintiff's injury").

In general, at trial a plaintiff "may establish a discrimination claim . . . through two avenues of proof." *Thomas v. Delmarva Power & Light Co.*, 715 Fed. App'x 301, 302 (4th Cir. 2018) (per curiam) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Nassar*, 570 U.S. 338). The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997); *see Thomas*, 715 Fed. App'x at 302. The plaintiff's second avenue is to follow the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 972 (1973). *See, e.g.*, *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the *McDonell Douglas* framework); *see also Sempowich v. Tactile Systems Technology, Inc.*, 19 F.4th 643, 649 (4th Cir. 2021) ("To survive a motion for summary judgment on a . . . disparate treatment claim, a plaintiff must either proceed under the mixed-motive framework or the *McDonnell Douglas* burden-shifting framework."). However, the *McDonnell Douglas* avenue is "inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

Although these avenues of proof were originally developed in the Title VII context, they have since been applied to § 1981 claims. *See, e.g.*, *BNT Ad Agency, LLC v. City of Greensboro*, 837 Fed. App'x 962, 969-70 (4th Cir. 2020); *Gary*, 822 Fed. App'x at 179-80; *Guessous*, 828 F.3d at 216; *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). The Fourth Circuit has affirmed that the Supreme Court's decision in *Comcast Corp.* "is consistent" with the use of the *McDonnell Douglas* framework. *Gary*, 822 Fed. App'x at 180.

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production" at trial. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). It is intended to be flexible, "not onerous," and is designed to uncover "circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). However, "*McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim," such as the but-for causation requirement. *Comcast Corp.*, 141 S. Ct. at 1019.

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, it "is 'not intended to be an inflexible rule.'" *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (citation omitted). And, even under the *McDonnell Douglas* approach, the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Burdine*, 450 U.S. at 253); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

Reference to these methodologies of proof often serves to inform a court's evaluation of a motion for summary judgment. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding

under the burden-shifting framework established in *McDonnell Douglas Corp*”); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 Fed. App’x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination “may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas*”).  However, in resolving a Rule 12(b)(6) motion, the question for the court is whether the plaintiff has stated a plausible claim for relief.  At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination.  Nonetheless, reference to the elements of a prima facie claim helps to gauge the adequacy of the factual allegations in terms of plausibility.

“To establish a prima facie case of discrimination in a § 1981 cause of action relating to the purchase of goods or services, [a plaintiff] must establish that: (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant’s ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers.”  *Williams*, 372 F.3d at 667-68 (concerning the refusal of a store to accept an out-of-state check as payment).  *See also, e.g.*, *Zeno*, 2009 WL 4738077, at *2 (applying this standard to a case involving the provision of “various banking services”).  The parties primarily structure their arguments around the *Williams* prima facie elements.  *See* ECF 33 at 8-24; ECF 37 at 10-21.[6]

In addition, as both parties acknowledge (ECF 33 at 24-28; ECF 37 at 20, 26-27), some courts in the Fourth Circuit have employed an alternate set of prima facie elements in certain

---

[6] In a recent case, *BNT Ad Agency, LLC*, 837 Fed. App’x at 970-72, the Fourth Circuit adopted somewhat different prima facie elements for § 1981 cases involving lending discrimination. But, this is not a case about alleged lending discrimination.  And, the decision in *BNT Ad Agency* preceded the briefing in this case.  Yet, neither party has suggested that the test adopted in *BNT Ad Agency* is appropriate here.

18

restaurant, retail, or public accommodations contexts. *See Callwood v. Dave & Busters*, 98 F. Supp. 2d 694, 706-07 (D. Md. 2000). In these circumstances, "plaintiffs must show the following: (1) they are members of a protected class; (2) they made themselves available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; and (3) they did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that (a) they were deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or (b) they received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." *Id.* at 707. The *Callwood* standard is designed for those circumstances in which it may not be realistic to expect plaintiff to produce comparator evidence, but it is not appropriate for use when there is "adequate comparative evidence." *Williams*, 372 F.3d at 668 n.5.

As indicated, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc.*, 469 U.S. at 121. "When the plaintiff seeks to prove her [§ 1981] case by direct evidence, she must establish her prima facie[] case by showing through admissible evidence that: (1) she is a member of a racial minority; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination concerned a privilege protected under § 1981." *Johnson v. Toys "R" Us-Delaware, Inc.*, 95 Fed. App'x 1, 6 (4th Cir. 2004). "In a direct evidence case, the plaintiff may meet her burden by the ordinary principles of proof using any direct or indirect evidence so long as the evidence is relevant to and sufficiently probative of the issue in question." *Id.*

In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading

requirement." Further, the Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A] . . . discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 557 U.S. 1138 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. Cty. of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly* the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods*, 855 F.3d at 648, a § 1981 case, the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" *See also Swaso v. Onslow Cty. Bd. of Educ.*, 698 Fed. App'x 745, 747-48 (4th Cir. 2017) ("While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." (internal citations omitted)); *McCleary*, 780 F.3d at 584; *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

In sum, at the motion to dismiss stage the question "is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII [or, in this case, § 1981] 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190). Or, as the Fourth Circuit recently put it in *Nadendla*, 24 F.4th at 305: "[T]o survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to [the] legal requirements" for a § 1981 claim, namely that defendant intended to discriminate on the basis of race, that the discrimination interfered in a contract, and that the interference would not have happened but for the plaintiff's race.

## 2.

As noted, although reference to the elements of a prima facie claim can help to gauge the adequacy of the Amended Complaint's allegations, plaintiff is not required to establish a prima facie case to survive a motion to dismiss. And, regardless of the prima facie test that is referenced, the analysis at this stage turns on whether plaintiff has plausibly alleged facts that, if taken as true, allow the Court to draw a reasonable inference of intentional, but-for racial discrimination. *Id*. The parties' arguments as to Count I almost exclusively concern this issue. *See* ECF 33 at 8-28; ECF 37 at 15-27; ECF 38 at 6-11.

There is no dispute that plaintiff is a member of a protected class. *See* ECF 12, ¶¶ 1, 12. And, there is no meaningful dispute that plaintiff allegedly sought to enter into a contractual relationship with defendant within the meaning of § 1981, by seeking to cash her paycheck at the Bank, but was unable to do so. *See id*. ¶¶ 17-28; *see also* ECF 38 at 10 (acknowledging that "Plaintiff has alleged that she is African-American, that she attempted to cash a valid payroll check, and that Harford Bank refused to cash the check"); *Middleton v. Wells Fargo Bank, N.A.*, 474 F. Supp. 3d 1290, 1294-97 (N.D. Ga. 2020) (plaintiff stated § 1981 claim when she alleged

that she was initially unable to cash a check, before trying successfully a second time); *Knight v. Wells Fargo Bank NA*, 459 F. Supp. 3d 1288, 1291-93 (N.D. Cal. 2019) (plaintiff stated § 1981 claim when he alleged that he was able to cash a check only after a lengthy delay and calling his attorney); *Craig v. US Bancorp*, No. Civ. 03-1680-AA, 2004 WL 817149, at *2-4 (D. Or. Apr. 14, 2004) (plaintiff stated § 1981 claim in similar circumstances as *Knight*).[7]

The Bank complains that much of the Amended Complaint is little more than conclusory, with critical allegations made only "on information and belief." ECF 33 at 16-18. In its view, this is a defective "pleading device." *Id.* at 18.

To be sure, the Amended Complaint alleges in multiple places that defendant's conduct was based on racial animus, or based solely on plaintiff's skin color, without supporting factual allegations. *See*, *e.g.*, ECF 12, ¶¶ 3, 4, 22, 23, 23, 31. Such allegations are mere "'naked assertions' of wrongdoing." *Francis*, 588 F.3d at 193 (citation omitted). Likewise, portions of the Amended Complaint make sweeping assertions as to the broader institutional practices of the Bank and its treatment of customers of color, without facts to support these bald accusations. To illustrate, in ECF 12, ¶ 32, plaintiff states: "Over time, Defendant established two processes for handling, treating, encountering, and dealing with its customers on a day-to-day basis: one for white customers and a separate, but not equal, process for its customers of color . . . . By relegating its

---

[7] At one point in its Reply, defendant states that plaintiff's allegations as to the "second and third elements [of the *Williams* prima facie case] were all conclusory and insufficient to state a claim for relief." ECF 38 at 6. The second prong of the *Williams* prima facie case concerns whether plaintiff "sought to enter into a contractual relationship with the defendant." *Williams*, 372 F.3d at 667. It is unclear if defendant meant to reference the second element in its Reply. Regardless, aside from this sentence, at no point in the Bank's briefing does defendant mount any argument that, by attempting to cash a check, plaintiff did not seek to enter into a contractual relationship with defendant. Instead, defendant's briefing concerns the adequacy of plaintiff's allegations of discrimination.

customers of color to a separate, but unequal, process, Defendant Harford Bank affords them inferior opportunities, and treats people of color as inferior."  .

However, the Amended Complaint also makes several specific allegations as to the discriminatory conduct of defendant.  They are "sufficient to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'"  *Woods*, 855 F.3d at 648 (quoting *Twombly*, 550 U.S. at 570). Specifically, the Amended Complaint alleges that plaintiff sought to cash a valid check drawn on the Bank and issued by a Bank customer that maintained its business account at the branch in question.  ECF 12, ¶¶ 19, 20, 30.  The amount of the check was less than $100.  *Id*. ¶ 3.  As ultimately confirmed by the branch's manager, the check was not fraudulent, and there was nothing "off" about its color.  *Id*. ¶ 25.  Indeed, according to the Complaint, there was "no reason to question the authenticity of the check."  *Id*. ¶ 20.

And, plaintiff alleges that when she attempted to cash the check, the teller immediately became hostile, "aggressively" asking plaintiff where the check was from.  *Id*. ¶ 21.  The teller supposedly informed plaintiff that she was "committing fraud" and "going to jail," locked the check in the bank's vault, confiscated plaintiff's I.D., and called the police.  *Id*. ¶ 22.  Furthermore, the teller commented to another employee that "they are always lying" and, when calling the police, she made a point of noting that "a black woman" was attempting to fraudulently cash a check.  *Id*. ¶ 24.  The police, together with the Bank manager, verified that the check was not fraudulent.  *Id.* ¶ 25.  Yet, the teller refused to return plaintiff's I.D. to her, despite the request to an African American police officer.  *Id.* ¶ 26.  Instead, she returned it only when requested to do so by a white police officer.  *Id*.  Furthermore, when plaintiff was forced to return the next day to recover her yet-uncashed check, she was informed that the Bank was closed, and she was made to

conduct her transaction through a Bank window. *Id.* ¶ 27. But, she saw a Caucasian customer enter the Bank, without issue. *Id.*

Many of plaintiff's comparator allegations are weak. *See Williams*, 372 F.3d at 667 (contemplating comparators at prima facie stage). For example, at various points, the Amended Complaint alleges that defendant "would not have" taken the various actions that it allegedly took if plaintiff had not been African American. ECF 12, ¶¶ 22, 23, 24. And, it asserts that, "[u]pon information and belief, [the] branch [in question] had not called the police and engaged in the same type of conduct for customers attempting to cash checks under $100 who were Caucasian." *Id.* ¶ 29. But, it does not provide allegations as to specific incidents or individuals. In particular, "[s]imply alleging '[u]pon information and belief' that such a comparator exists is not sufficient to survive a motion to dismiss." *Fagbuyi v. Prince George's Cty.*, GJH-17-2876, 2018 WL 2290705, at *5 (D. Md. May 2018) (first alteration mine; second in *Fagbuyi*).

However, as noted, § 1981 claims may also be advanced through direct evidence of discrimination, without any need for comparators. Given plaintiff's allegations as to the teller's conduct, plaintiff argues she has done so. *See* ECF 37 at 16. And, at the motion to dismiss stage, when plaintiff need not establish a prima facie case, the allegations are certainly sufficient.

Furthermore, under the *Callwood* alternate set of prima facie elements, no comparator is required. *See Callwood*, 98 F. Supp. 2d at 706-07; *see also Williams*, 372 F.3d at 668 n.5 (noting this framework is not appropriate when there is "adequate comparative evidence"). Under this framework, a plaintiff may establish a prima facie case by alleging that she received services "in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." *Callwood*, 98 F. Supp. 2d at 707.

In *Callwood*, Judge Andre Davis, then a district judge, identified factors pertinent to the issue of a "markedly hostile manner."  He said, *id.* at 708: "Factors relevant to the determination of whether conduct is 'markedly hostile' are whether the conduct of a merchant or her agents is (1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination."  At the Rule 12(b)(6) stage, the conduct alleged here—the teller aggressively refusing to cash a valid check drawn on the Bank, in an amount less than $100, and then confiscating the check and plaintiff's I.D., and calling the police— certainly fits within the *Callwood* criteria.

In evaluating the adequacy of the Amended Complaint at the Rule 12(b)(6) stage *Middleton*, 474 F. Supp. 3d 1290, is instructive.  Although not cited by the parties, the case concerns a very similar set of facts.  The plaintiff in *Middleton*, an African American woman, attempted to cash a $200 check at the defendant bank.  *Id.* at 1292.  There was no indication that the check was fraudulent, but the teller nevertheless treated the plaintiff rudely, erroneously claimed that the check was fraudulent, and called the police.  *Id.* at 1292-93.  After the police arrived, they determined that the check was legitimate, and the plaintiff was eventually able to cash it.  *Id.* at 1293.

The plaintiff brought a § 1981 claim against the bank.  In denying the bank's motion to dismiss, the court remarked, *id.* (internal citations omitted):

> [W]hat should have been a simple transaction, resulted in accusations of fraud and an aggressive and unwarranted interrogation, and caused Ms. Middleton to suffer deep embarrassment and humiliation. She was outraged, humiliated, and traumatized. While neither the teller nor the managers used any racial slurs or epithets, in her experience living as an African American, Ms. Middleton is able to identify when she is being discriminated against on the basis of race. Ms. Middleton has witnessed firsthand the differences in how white Americans are treated and how black Americans are treated, and knew from the teller's facial expression, body

25

language, tone, language, and attitude, that she was discriminating against her because of the color of her skin.

In addition, the plaintiff in *Middleton* had alleged, *id*. at 1293: "Other white individuals that received a refund check from [the same company] were able to cash said checks at Wells Fargo without having to endure that which Ms. Middleton endured." This comparator allegation is not much more specific than what is set forth in the Amended Complaint.

Conversely, many of the cases cited by defendant in the Motion were decided on summary judgment, or involved sparser factual allegations than those in the Amended Complaint. For example, the Bank cites *JM Adjustment Servs., LLC v. J.P. Morgan Chase Bank, N.A.*, No. 16-10630, 2018 WL 1168940 (E.D. Mich. Mar. 6, 2018). There, the Court granted summary judgment to the defendant bank after rejecting the argument that the bank's closure of plaintiffs' accounts was not "markedly hostile." *Id*. at *5-7. But, crucial to the bank's actions, and the court's decision, was that the plaintiffs had engaged in a pattern of large cash withdrawals seemingly structured to avoid anti-money laundering regulations. *Id*. No such obvious explanation is alleged here. *See also, e.g.*, *McCleary*, 780 F.3d at 585-86 (purely conclusory allegations at to hiring process); *Johnson*, 95 Fed. App'x at 7 (on summary judgment, when only piece of direct evidence was comment that plaintiff "looked suspicious"); *Guess v. Adams*, C/A No. 3:15-657-CMC-PJG, 2015 WL 1549062, at *3 (D.S.C. Mar. 23, 2015) (purely conclusory allegations); *Boardley*, 39 F. Supp. 3d at 710 (only vague and conclusory allegations); *Acey v. Bob Evans Farms, Inc.*, No. 2:13-cv-4916, 2014 WL 989201, at *3-6 (S.D. W. Va. Mar. 13, 2014) (plaintiff, a restaurant patron, treated rudely and called "damn idiot" by hostess); *Hill v. Abercrombie & Fitch*, ELH-11-910, 2011 WL 4433573, at *5-6 (D. Md. Sept. 20, 2011) (nothing more than conclusory statements and fact that plaintiff was African American and security guard was white); *Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 556-69 (D. Md. 2005) (on motion construed as one for summary judgment,

26

restaurant patron satisfied prima facie case as to claim of slow service, but failed to overcome legitimate explanation that restaurant was short staffed).

Defendant also argues that there was an "obvious, alternative explanation" for its conduct not based on racial animus, namely the Bank's duty to protect itself and its customers from fraud. ECF 33 at 18.  However, such an explanation is only sufficient at this stage if it "is so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [plaintiff's] claim of pretext implausible."  *Woods*, 855 F.3d at 649.  Defendant has not met that bar.

Much of the Bank's argument relies on the video it has submitted as an exhibit, which I may not consider at this stage.  *See* ECF 33 at 19-21.  Moreover, in the Amended Complaint, plaintiff alleges that there was "absolutely no reason to question the authenticity of the check," which was eventually determined to be valid.  ECF 12, ¶¶ 20, 25.

The allegations, which I must accept as true at this juncture, allow the Court to draw a reasonable inference that the elements of a § 1981 discrimination claim have been met.  *See Nadendla*, 24 F.4th at 305; *see also Woods*, 855 F.3d at 652 (in the context of a § 1981 claim, noting that "discrimination claims are particularly vulnerable to premature dismissal because civil rights plaintiffs often plead facts that are consistent with both legal and illegal behavior, and civil rights cases are more likely to suffer from information-asymmetry, pre-discovery").  Accordingly, I will deny the Motion as to plaintiff's § 1981 claim.

## B.  Equal Credit Opportunity Act

Count II of the Amended Complaint lodges a claim under the Equal Credit Opportunity Act.  ECF 12, ¶¶ 47-55.  As relevant here, the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the

basis of race, color, religion, national origin, sex or marital status, or age."  15 U.S.C. § 1691(a)(1).

Plaintiff alleges that the Bank violated this provision by refusing to cash her check, and by failing

to provide her with "any reason or notice of the denial with an accurate statement of the reasons

for the denial."  ECF 12, ¶ 49.

In response, the Bank argues that a check is not a "credit transaction" as defined by the

ECOA, and thus Count II fails to state a claim.  ECF 33 at 28-29.  In her Opposition, plaintiff does

not address this argument.  Indeed, the Opposition does not even acknowledge that plaintiff

asserted an ECOA claim.

Judges in this district have held that, by failing to respond to an argument made in a motion

to dismiss, a plaintiff abandons his or her claim.  *See, e.g.*, *Kitchings v. Shelton*, PWG-17-882,

2018 WL 398285, at *6 (D. Md. Jan. 12, 2018) ("When a defendant's motion to dismiss a

complaint states specific deficiencies that warrant dismissal, and presents supporting legal

arguments, it is the plaintiff's obligation to respond substantively to address them.  Failure to

respond to the defendants [sic] arguments constitutes abandonment of those claims."); *Stenlund v.

Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's]

argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp.

2d 772, 777 (D. Md. 2010) (same).

In any event, the Bank's argument is supported by relevant authority.  *See, e.g.*, 15 U.S.C.

§ 1691a(d) (defining "credit" as "the right granted by a creditor to a debtor to defer payment of

debt or to incur debts and defer its payment or to purchase property or services and defer payment

therefor"); *Pullins v. Bank of America*, No. CV-19-00006, 2020 WL 1450560, at *4 (M.D. La.

Mar. 25, 2020) (check does not constitute ECOA credit transaction when no conduct relating to a

debt alleged); *Jackson v. Bank of America*, No. EDCV 16-2522 JGB, 2017 WL 5635031, at *2

(C.D. Cal. Mar. 9, 2017) (same); *Roberts v. Walmart Stores, Inc.*, 736 F. Supp. 1527, 1529-30 (E.D. Mo. 1990) (same).

Accordingly, I will dismiss Count II, relating to the ECOA.  And, because the alleged conduct falls outside of the ECOA as a matter of law, dismissal shall be with prejudice.

## C. Conversion

Count III is a State law claim for conversion.  *See* ECF 12, ¶ 56.  Defendant makes no substantive arguments concerning Count III.  Instead, its only argument is that if the Court dismisses plaintiff's federal claims, it should decline to exercise supplemental jurisdiction with respect to plaintiff's State law claims (Count III and Count IV).  *See* ECF 33 at 32-34.

As noted, I decline to dismiss plaintiff's § 1981 claim.  Therefore, this argument is inapplicable.  Count III may proceed.

## D. Emotional Distress

Count IV asserts a State law claim for "Negligent, Reckless and/or Intentional Infliction of Emotional Distress."  *See* ECF 12, ¶¶ 57-60.  For a State law claim considered under supplemental jurisdiction, as here, the Court must apply the law of the forum state (including as to choice of law).  *See, e.g.*, *Nash v. Montgomery Cty.*, GJH-20-1138, 2021 WL 1222874, at *7 n.7 (D. Md. Mar. 31, 2021); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008).  In tort actions, Maryland adheres to the *lex loci delicti* rule, meaning it applies the substantive law of the state where the wrong occurred.  *Ben-Joseph*, 529 F. Supp. 2d at 606 (citing *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 619, 925 A.2d 636, 648-49 (2007)) (other citations omitted); *see also DiFederico v. Marriott Int'l, Inc.*, 677 Fed. App'x 830, 833 (4th Cir. 2017). Because plaintiff's claim is premised on alleged events that occurred in Maryland, Maryland law applies.

29

As defendant notes (ECF 33 at 30), although "emotional distress sometimes can be recovered as part of the damages suffered as a result of negligence," Maryland "does not recognize the tort of 'negligent infliction of emotional distress' as an independent cause of action." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 517, 665 A.2d 297, 320 (1995) (Hollander, J.), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996); *see also, e.g.*, *Bond v. U.S. Postal Serv. Fed. Credit Union*, 164 F. Supp. 3d 740, 750 (D. Md. 2015); *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 61-64, 502 A.2d 1057, 1065-66 (1986), *cert. denied*, 306 Md. 118, 507 A.2d 631 (1986).  Thus, defendant's briefing approaches Count IV as a claim for intentional infliction of emotional distress ("IIED").  *See* ECF 33 at 30-32.  Plaintiff does not contest defendant's contention as to negligent infliction of emotional distress, instead rebutting defendant's IIED argument.  *See* ECF 37 at 22-29.  Accordingly, the Court will analyze Count IV as an IIED claim.

Generally speaking, claims for IIED are disfavored, difficult to establish and, as such, "rarely viable."  *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011); *see generally Arsham v. Mayor & City Council of Balt.*, 85 F. Supp. 3d 841, 850 (D. Md. 2015); *Manikhi v. Mass. Transit Admin.*, 360 Md. 333, 367, 758 A.2d 95, 113 (2000); *Bagwell*, 106 Md. App. at 514, 665 A.2d at 319 (stating that the tort of intentional infliction of emotional distress is "difficult to satisfy"); *see also* DAVID CRUMP, RETHINKING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, 25 Geo. Mason L. Rev. 287, 297 (2018) (noting that an IIED claim is "a kind of vituperative epithet" that "adds little that can be the subject of a separate or additional recovery" but "makes [the litigation] more expensive").

In Maryland, in order to prevail on a claim for IIED, a plaintiff must show that (1) the defendant's conduct was intentional or reckless; (2) her conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the emotional

distress suffered; and (4) the emotional distress was severe.  *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977); *accord, e.g.*, *Caldor, Inc. v. Bowden*, 330 Md. 632, 641-42, 625 A.2d 959, 963 (1993); *Mixter v. Farmer*, 215 Md. App. 536, 548, 81 A.3d 631, 637 (2013); *Lasater v. Guttmann*, 194 Md. App. 431, 448, 5 A.3d 79, 89 (2010).

The defendant's conduct must be "'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"  *Arsham*, 85 F.Supp.3d at 850 (quoting *Harris*, 281 Md. at 567, 380 A.2d at 614).  Indeed, "[t]o be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'"  *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (quoting *Hamilton*, 66 Md. App. at 59-60, 502 A.2d at 1064), *aff'd*, 166 F.3d 1208 (4th Cir. 1998).  Moreover, since the Maryland Court of Appeals first recognized the tort of IIED in 1977, *Harris*, 281 Md. 560, 380 A.2d 611, it has repeatedly advised that "recovery" for IIED "will be meted out sparingly[.]"  *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (1991); *see Batson v. Shiflett*, 325 Md. 684, 733, 602 A.2d 1191, 1216 (1992); *Caldor, Inc.*, 330 Md. at 642, 625 A.2d at 963.

In her Opposition, plaintiff alleges IIED on the grounds that defendant "intentionally discriminat[ed]" against her, threatened criminal action against her, and withheld her personal identification.  ECF 37 at 27-28.  Further, she claims that "her young children . . . feared their mother would be taken to jail . . . ."  *Id.* at 28.  Yet, in her suit, plaintiff claims that on March 20, 2020, when she drove to the Bank, only her baby was with her.  ECF 12, ¶¶ 12, 17.  Therefore, her older child did not witness the incident.

Courts have rejected IIED claims in comparable, or arguably more serious, circumstances.  *See, e.g.*, *Womack v. Tierco Maryland, Inc.*, 38 Fed. App'x 850, 858 (4th Cir. 2002) (plaintiff

accused of stealing a drink at an amusement park, was handcuffed and escorted from the park, and accused security guards of threatening her and tightening her handcuffs to punish her); *Bongam v. Action Toyota, Inc.*, 14 Fed. App'x 275, 283 (4th Cir. 2001) (defendant alleged to have used unambiguous racial epithet while refusing service to potential customer); *Shelton v. Safeway, Inc.*, PJM-10-2358, 2011 WL 1869827, at *5 n.6 (D. Md. May 16, 2011) (plaintiffs loudly and erroneously accused of shoplifting at the supermarket in front of their families and other store patrons by a store guard, who also grabbed one plaintiff's arm "with force" and attempted to lead her away to another room); *Tavakoli-Nouri v. State*, 139 Md. App. 716, 728-29, 779 A.2d 992, 999-1000 (2001) (plaintiff forcibly handcuffed and dragged across hall by State Police troopers at Motor Vehicle Administration building).  Plaintiff has not provided contrary case law.

Here, plaintiff does not allege the use of any force or restraint.  Nor does she assert the use of an unambiguous racial epithet.  Plaintiff merely alleges that she suffered "severe emotional distress that no reasonable person could be expected to endure" (ECF 12, ¶ 59), which is nothing more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The other allegations as to plaintiff's injuries elsewhere in the Amended Complaint are likewise conclusory.  *See* ECF 12, ¶¶ 35, 46, 55.  Again, plaintiff offers no contrary case law.

The "balm" of IIED recovery is to be "'reserved for those wounds that are truly severe and incapable of healing themselves.'" *Figueiredo-Torres*, 321 Md. at 653, 584 A.2d at 75 (internal citation omitted).  In my view, plaintiff has not alleged conduct that is sufficiently "extreme and outrageous" so as to meet the high bar for an IIED claim.  When a "plaintiff has done no more than conclusorily allege that [s]he suffered 'severe emotional distress' and 'mental anguish,'" this is insufficient to make out an IIED claim.  *Farasat*, 32 F. Supp. 2d at 248 (internal citations omitted); *see also, e.g.*, *Womack v. Ward*, DKC-17-3634, 2018 WL 3729038, at *6 (D. Md. Aug.

6, 2018) (assertion that plaintiff suffered various forms of stress and anxiety, without additional supporting factual allegations, insufficient); *Tavakali-Nouri*, 139 Md. App. at 728-29, 779 A.2d at 999-1000 (assertion that plaintiff "suffered emotional distress and anguish," without supporting factual allegations, insufficient).

Because plaintiff has failed to allege all of the elements of an IIED claim, I will dismiss Count IV.  Defendant seeks dismissal with prejudice.  *See* ECF 33 at 34.  I agree that, in light of the discussion above, plaintiff is unlikely to be able to amend her Complaint to state a cognizable IIED claim.  However, given that dismissal rests on plaintiff's inadequate factual allegations, dismissal shall be without prejudice.  I shall grant plaintiff leave to amend the Complaint as to Count IV only.  If plaintiff does not file a Second Amended Complaint within 21 days of the docketing of this Memorandum Opinion and accompanying Order, I shall dismiss Count IV, with prejudice.

## IV.  Conclusion

For the reasons stated above, I shall grant the Motion in part and deny it in part.  I shall dismiss Count II with prejudice and Count IV without prejudice.  Count I and Count III shall proceed.  And, plaintiff may amend her Complaint, as discussed above.

An Order follows, consistent with this Memorandum Opinion.

Date:   March 4, 2022                                   _____/s/_____

                                                                    Ellen L. Hollander
                                                                    United States District Judge

33